**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                        NORTHERN DISTRICT OF CALIFORNIA
7
8    JASON PAGE,                                No. C-09-0289 EMC (pr)
9              Plaintiff,
                                                **ORDER DENYING PLAINTIFF'S**
10        v.                                     **MOTION TO RENEGE ON**
                                                **SETTLEMENT AGREEMENT AND**
11   R. HOREL, *et al.*,                         **DENYING PLAINTIFF'S REQUEST**
                                                **FOR COUNSEL**
12             Defendants.
     _____/           **(Docket Nos. 68, 79)**
13
14
15              **I.    INTRODUCTION**
16        Jason Page, an inmate currently at the California Substance Abuse Training Facility in
17   Corcoran, filed a *pro se* civil rights action in the Del Norte County Superior Court concerning
18   conditions at Pelican Bay State Prison, where he previously was housed.  The action was removed to
19   federal court by Defendants because the constitutional claims asserted by Plaintiff presented a
20   federal question.  The Court eventually referred the action to the Court's *Pro Se* Prisoner Mediation
21   Program, and the action settled.  Plaintiff now moves to "renege" on the settlement agreement.
22   Defendants oppose that motion.  For the reasons discussed below, Plaintiff's motion to renege on the
23   settlement will be **DENIED**.  Plaintiff's motion for appointment of counsel also will be **DENIED**.
24              **II.   BACKGROUND**
25   A.    Substance And History Of The Action
26        In his amended complaint, Page alleged that he was attacked by inmate Johnson on
27   November 13, 2008 as a result of Defendants' deliberate indifference to his safety.  On that date,
28   Page was housed in the Pelican Bay Special Needs Yard ("SNY"), and inmate Johnson allegedly

was a "gang member" housed in the general population.  Amended Complaint, p. 2.  Inmate Johnson "penatrated (sic) security access and breached the SNY yard area, attacking the plaintiff and battering him." *Id.*  According to exhibits attached to the amended complaint, inmate Johnson ran out of the dining hall area and into the SNY yard, where he attacked Page, punching him several times. *See* Amended Complaint, Exs. B and C.  Correctional officers stopped the attack with verbal commands and handcuffed the inmates.

Page described his injuries in his inmate appeal:  "Dr. Williams checked my ear drum to see if it was broken.  I had a big lump under my sideburn from the attackers (sic) blow, and my temple hurt.  Also my left elbow was hyper-extended.  My neck hurt and my elbow still hurts as of 11/30/08."  Amended Complaint, Ex. C, 4th page; *cf.* Amended Complaint Ex. B (report of injury for Page listing only injury as a reddened area on his upper front torso, for which he was checked and returned to custody).  The attack was caught on videotape and was quick:  "From the time the video shows inmate Johnson advancing toward [Page] and [they both were] complying with verbal orders is about 35 seconds."  Amended Complaint, Ex. C at First Level Appeal Response.

Page's legal claims in this action were that:  (1) Defendants failed to prevent Johnson from getting from the general population area into the SNY to reach him, and (2) Defendants failed to take steps (including using pepper-spray) to stop the attack once Johnson got into the SNY and went after Page.  Upon initial review, the Court determined that cognizable § 1983 claims for Eighth Amendment violations were stated based on Defendants' alleged deliberate indifference to Page's safety.

Defendants moved to dismiss the action on the grounds that most of the allegations had to be dismissed for failure to exhaust administrative remedies, and that the pepper-spray claim had to be dismissed because it failed to state a claim and because they were entitled to qualified immunity for that claim.  The Court denied the motion to dismiss and referred the action to the *Pro Se* Prisoner Mediation Program.  Plaintiff had requested a mediation/settlement conference long before Defendants' motion to dismiss was filed.  *See* Docket # 19, # 20.

**United States District Court**
For the Northern District of California

B.      The Settlement Conference

On June 6, 2011, the Clerk issued a notice that the settlement conference was set for July 25, 2011. *See* Docket # 55.

On July 25, 2011, a settlement conference was held in San Francisco. United States Magistrate Judge Nandor Vadas presided over the proceedings. The parties settled the matter. Magistrate Judge Vadas then put the settlement on the record after observing that, "after negotiations this afternoon regarding this matter, the parties have been able to come to a resolution of the case short of any further litigation." Docket # 72, Reporter's Transcript ("RT") 3.

> THE COURT: All right. Would counsel for the defendants please state the settlement.
>
> MR. KENNY: Okay. The settlement, Your Honor, is that, for $1,000, the plaintiff, Jason Page, will dismiss this lawsuit.
>
> THE COURT: All right. And Mr. Page, is that your understanding of the settlement?
>
> MR. PAGE: Yes, I accept that, Your Honor.
>
> THE COURT: All right. Could counsel recite the general release?
>
> MR. KENNY: Yes, Your Honor. The undersigned agrees that this general release is intended to be the full and final compromise, release and settlement of all claims, demands, actions, causes of action, known or unknown, suspected or unsuspected, relating to the above-described incident and matter. [¶] And as a further consideration and inducement for this compromised settlement, the undersigned expressly waives the provisions of Section 1542 of the California Civil Code which read as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which is known by him must have materially affected his settlement with the debtor."
>
> THE COURT: What that says, Mr. Page, is that when you settle today, this case, it's settled for good. Okay?
>
> MR. PAGE: (Nods head affirmatively.)
>
> THE COURT: Mr. Page, is that your understanding and you're willing to settle for $1,000 in this matter?
>
> MR PAGE: Yes, Your Honor.
>
> THE COURT: And the State is willing to pay $1,000. Is that correct Mr. Gatchalian?
>
> MR. GATCHALIAN: Yes, Your Honor.

3

THE COURT:  Therefore, the matter has been resolved and we will order that the matter be taken -- as soon as the check has been paid off, then I assume that you'll file a dismissal. [¶]  All right.  Mr. Page, counsel for the State is going to send you some documents.  They're going to send you the settlement agreement.  Then they're going to send you also a payee data sheet that you will need to fill out in order to get the money on your books.  [¶]  And then they will also send you a dismissal.  You'll sign the dismissal and the settlement agreement, fill out the payee data sheet.  After you have done that, when you get the dollar amount -- okay?  -- then they will file the dismissal.  Okay?  There is no tricky -- there is no – [¶]  Nobody is playing any tricks here.  All right?  You will get the $1,000.  [¶]  Generally, it takes anywhere from 60 to 180 days to get the check in your account.  It would make no difference if you're a plaintiff prisoner or a contractor with the State.  It all takes about that long.  But the check will be deposited.  [¶]  If there is any problem, you have recourse to call me and we can set up a phone conference to see what's happening with the check.  All right? [¶]  Do you have any questions?

MR PAGE:  No, sir.

RT 3-5.

C.    Page's Efforts To Undo The Settlement

Within a day of settling the action, Page began his efforts to undo the settlement.  On July 26, 2011, the day after the settlement conference, Page wrote a letter to Judge Patel[1] to inform her that he "wanted [her] to be aware of [his] intent to obstruct the settlement conference determination" and "will not sign any Dismissal papers sent by the Attorney General."  Docket # 70, p. 1.  Page wrote that he "was put into such a state of shock by the Judge Vadas, obsurdity (sic) of settlement and the threat of possible sanctions if I was to try this case and lost, that I was temporarily persuaded and succumed (sic) to the pressure, with such in your face depravity."  *Id.* (errors in source).  He wrote that he believed that Magistrate Judge Vadas "had a proclivity in favor of the Attorney General and Ms. Coleman, that made [Page] very nervous."  *Id.*  For example, the Magistrate Judge never asked if Page objected to the presence of Defendant Noble's attorney, Susan Coleman.  *Id.*

Also on July 26, 2011, Page sent a letter to the undersigned indicating his desire to back out of the settlement and that he would not sign the settlement agreement.  *See* Docket # 71.  Page wrote that he "felt coerced into settlement" by Judge Vadas, and "object[ed] to the personal proclivity of

_____

[1] Judge Patel presided over the action before it was reassigned to the undersigned on June 6, 2011.

4

**United States District Court**
For the Northern District of California

1    Judge Vadas, towards the Defendants, and the scare tactics of sanctions." *Id.*  Page also objected to

2    Defendant Noble's attorney being present, as the "settlement conference was scheduled for

3    Defendants Jacquez, McGuyer, Osborne and Ramsey only." *Id*.

4        Also on July 26, 2011, Page sent a "Motion To Renege / Withdraw Settlement Provisions;

5    Plaintiff Demands Jury Trial" to the Court.  Docket # 68.  In his motion, Page wrote that he wanted

6    to withdraw from the settlement that had been reached.  Plaintiff stated that he wanted to renege

7    because, "[i]n conference with Judge Vadas, I was befuddled as to intimidation of the defendants

8    Counsel, explaining that if I demand Jury Trial, that I would not be appointed any counsel.  That the

9    Attorney General, would manipulate the Jury into belief, that the attacks on me were nothing more

10   then accidental, and even with *Prima Facia* evidence, that if I lost at Trial The Attorney General

11   would bring sanctions against me for an amount of $10,000 or more, put it on my Inmate trust

12   account so I would not receive any monies sent or earned from prison jobs."  Docket # 68, p. 1

13   (errors in source).

14       Page wants to negotiate a new settlement.  *See* Docket # 70 (July 26, 2011 letter in which

15   Page wrote:  "I would prefer a second settlement re-scheduling after all Defendants have completed

16   their Motions and response's to Summary Judgment"); Docket # 79 (requesting counsel because he

17   "anticipates a settlement agreement to be achieved at second settlement conference" or the action

18   will go to trial).

19                    **III.    DISCUSSION**

20       A district court has the inherent power summarily to enforce a settlement agreement with

21   respect to an action pending before it.  *See In re City Equities Anaheim, Ltd. v. Lincoln Plaza*

22   *Development Co.*, 22 F.3d 954, 958 (9th Cir. 1994); *cf. Kokkonen v. Guardian Life Ins. Co. of*

23   *America*, 511 U.S. 375, 377, 381 (1994) (district court did not have inherent power to enforce

24   settlement agreement after dismissal order had been entered that did not retain jurisdiction over the

25   settlement agreement).  A settlement agreement in a pending action may be enforced if two

26   requirements are met:  (1) both parties must have agreed to the terms of the settlement or authorized

27   their respective counsel to settle the dispute, and (2) it must be a complete agreement.  *See Callie v.*

28

**United States District Court**
For the Northern District of California

1    *Near*, 829 F.2d 888, 890-91 (9th Cir. 1987); *Harrop v. Western Airlines, Inc*., 550 F.2d 1143, 1144-

2    45 (9th Cir. 1977).

3        The settlement agreement in this action meets both requirements for an enforceable

4    settlement.  The first requirement is easily met, as both Plaintiff and Defendants' representative

5    agreed to the terms of the settlement at the settlement conference.  Page does not -- nor could he

6    seriously -- contend he lacked authority to settle his own claims.  The second requirement also is

7    met:  the agreement was complete at the settlement conference, even though it had not yet been

8    reduced in writing.  The oral agreement between Page and Defendants -- that (1) Defendants will

9    pay Page $1,000, (2) Page will dismiss the action, and (3) Page will execute a general release of

10   claims -- was memorialized on the record at the settlement conference.  *See* Docket # 72, RT 3-4.

11   Although an evidentiary hearing is required "[w]here material facts concerning the existence or

12   terms of an agreement to settle are in dispute," *see Callie*, 829 F.2d at 890, no hearing is necessary

13   here because the "parties dispelled any such questions in open court," *Doi v. Halekulani Corp.,* 276

14   F.3d 1131, 1138 (9th Cir. 2002).

15       Page argues that there was no settlement because he never signed a written agreement and

16   the "oral agreement is ineffectual."  Docket # 77 (Reply To Opposition To Motion To Renege) at 2.

17   He is wrong on the law: the oral agreement is enforceable.  *See Doi*, 276 F.3d at 1138-39.  Likewise,

18   his argument that he "reserves The Constitutional Right to reject settlement contract as

19   unacceptable,"  Docket # 77, p. 1 (errors in source), finds no support in the law.  The present

20   situation is quite similar to the situation in *Doi*, where the plaintiff refused to execute a written

21   agreement after the district court facilitated settlement discussions at which a plaintiff agreed to a

22   negotiated settlement that was memorialized in the record.  *See Doi*, 276 F.3d at 1134.  The district

23   court in *Doi* entered a judgment compelling settlement pursuant to the oral agreement entered in

24   open court and sanctioned the plaintiff for failing to sign the settlement agreement.  The Ninth

25   Circuit affirmed the district court and flatly rejected the plaintiff's contention that she did not intend

26   to be (and was not) bound until there was a writing.

27          In this case . . . the settlement was negotiated in off-the-record
          discussions with the court.  The parties then went into open court and

28

accounted that there was a settlement.  The settlement contained agreement as to all material terms, which terms were put on the record. . . .  And in response to direct questioning by the court Doi stated that she agreed with the terms. . . . [T]here was no need for the court to engage in factual inquiries to determine whether Doi agreed to be bound by the terms of the agreement.  Any question as to Doi's intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said "yeah."  *See Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000) (holding, despite appellant's allegations that he was not bound by a settlement agreement because he had not signed it, that "it is well-established that an oral agreement is binding on the parties, particularly when the terms are memorialized into the record"); *see also In re Christie*, 173 B.R. 890, 891 (Bankr. E.D. Tex. 1994) ("An agreement announced on the record becomes binding even if a party has a change of heart after [she] agreed to its terms but before the terms are reduced to writing.").

*Doi*, 276 F.3d at 1137-38 (footnote omitted).  As in *Doi*, Page cannot avoid the settlement agreement on the ground that it has not yet been reduced to writing.  Also as in *Doi*, there is no need to have an evidentiary hearing as to the terms or the existence of the agreement because the parties put it on the record.  *See id*, at 1138-39.

Page urges that he was overwhelmed by his opponents and the Court at the settlement conference.  He apparently is trying to urge that he entered the settlement agreement as a result of duress.

"[A] contract . . . obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress." *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (internal citations and quotation marks omitted); *see also* Cal. Civ. Code § 1689(b). "Economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin. . . . The wrongful act must be 'sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" *Sheehan*, 812 F.2d at 469 (internal citations and quotation marks omitted).

**United States District Court**
For the Northern District of California

1    Page comes nowhere close to showing that this settlement agreement may be avoided on the

2    ground of duress.  The events he describes are not of such a nature as to deprive him of the free

3    exercise of his will.  Most of what he describes amounts to nothing more than the usual give-and-

4    take that routine occurs in settlement negotiations.  A party quite typically emphasizes the strengths

5    of his case and the weaknesses of his opponent's case, and often emphasizes the downside to an

6    opponent going to trial.  Defendants did so here.  Page has not shown misconduct by Defendants, let

7    alone any sort of oppression that would let him avoid the contract he entered.  "Simple hard

8    bargaining must not be confused with economic coercion."  *Sheehan*, 812 F.2d at 469.  Defendants'

9    alleged statement that they would win if the action went to trial does not show coercion or duress.

10   Defendants' alleged statement that counsel would not be appointed for Page was a reasonable

11   assertion in light of the Court's earlier order denying Page's request for appointment of counsel.

12   *See* Docket # 16, pp. 4-5.  Defendants allegedly said that they would seek $10,000 in sanctions if

13   Plaintiff lost at trial, but that was not coercive because Defendants seeking sanctions does not

14   necessarily mean the Court will award the sanctions.  There is no evidence that Rule 11 sanctions

15   were on the horizon, but Defendants reasonably could point out that there was a downside financial

16   risk to Plaintiff if he lost at trial.  Defendants would be entitled to an award of costs if they prevailed

17   at trial.  *See* Fed. R. Civ. P. 54(d).  More importantly, under certain circumstances, prevailing

18   defendants in a civil rights action can recover attorneys' fees, which are usually significantly larger

19   than costs.  *See* 42 U.S.C. § 1988(b); *Fox v. Vice*, 131 S. Ct. 2205, 2215 (2011) (when civil rights

20   action includes both frivolous and non-frivolous claims, a prevailing defendant may "receive only

21   the portion of his fees that he would not have paid but for the frivolous claim").  It was not improper

22   or false for Defendants allegedly to suggest that Page could return worse than empty-handed if he

23   went to trial and lost.

24   Page also has not shown anything said or done by Magistrate Judge Vadas that amounted to

25   coercion or duress that would allow Page to avoid the contract he entered.  Page urges that

26   Magistrate Judge Vadas expressed bias in favor of the Defendants, but what he describes is a routine

27   technique used to facilitate settlement, *i.e.*, a neutral may point out weaknesses in the party's case

28   and strengths in the opponent's case to encourage a party to compromise.  *See* N. D. Cal. ADR Local

United States District Court

For the Northern District of California

1    Rule 7-1 ("Some settlement Judges use mediation techniques in the settlement conference to

2    improve communications among the parties, probe barriers to settlement, and assist in formulating

3    resolutions.  A settlement Judge might articulate views about the merits of the case or the relative

4    strengths and weaknesses of the parties' legal positions."); N. D. Cal. ADR Local Rule 6-1 ("The

5    mediator improves communication across party lines, helps parties articulate their interests and

6    understand those of their opponent, probes the strengths and weaknesses of each party's legal

7    positions, identifies areas of agreement and helps generate options for a mutually agreeable

8    resolution to the dispute."); *see also Gevas v. Ghosh*, 566 F.3d 717, 719-20 (7th Cir. 2009) (it is

9    improper judicial coercion for a judge to threaten to penalize a party that refuses to settle, "[b]ut a

10   judge may encourage settlement, . . . and he or she is not prohibited from expressing a negative

11   opinion of a party's claim during discussions as a means to foster an agreement"); *id.* (rejecting *pro*

12   *se* prisoner's attempt to set aside settlement agreement on the basis that settlement judge told him at

13   the outset of the conference that his case against defendant prison doctor was meritless).  Page's

14   argument that Magistrate Judge Vadas erred in allowing Defendant Noble's counsel to take part in

15   the settlement agreement is meritless:  no Defendant was excluded from the settlement agreement.

16   The settlement Page ultimately agreed included a general release that resulted in the termination of

17   all his claims pertaining to the incident, and that includes claims against Defendant Noble and the

18   unserved Defendants.[2]

19        The Court had not ordered that the action *had* to settle, but only referred the action to the

20   program so that it could settle if the parties so chose.  Plaintiff had requested such a reference.  The

21   order that sent the action to the program contemplated that the action might not settle and that

22   further proceedings might later occur.  *See* Docket # 49 (Order Denying Motion To Dismiss And

23   Referring Action To Prisoner Mediation Program), p. 11 ("In light of the referral of this case to the

24   _____

25        [2]  The general release to which Page agreed "is intended to be the full and final compromise,
     release and settlement of all claims, demands, actions, causes of action, known or unknown,
26   suspected or unsuspected  releases all claims arising from the above-described incident and matter."
     Docket # 72, RT 4.  As a result, there is no point pursuing service on the two unserved
27   Defendants, as Page requested in his "Request For Review" filed on October 21, 2011.  The release
     covers those Defendants, as well as the Defendants at the settlement conference.  As Magistrate
28   Judge Vadas said -- and Page nodded in agreement -- "when you settle today, this case, it's settled
     for good."  Docket # 72, RT 4.

*Pro Se* Prisoner Mediation Program, the court will not at this time set deadlines for filing dispositive motions by any of the defendants.  If the case is unable to be resolved through the mediation program, the court then will set a briefing schedule for dispositive motions so that all defendants are on the same briefing schedule.")

      Had Page disliked the terms offered, he could have simply refused to enter into a settlement agreement.  There does not appear to be any reason to expect that Plaintiff would be especially vulnerable.  Regardless whether he accepted or rejected the settlement, Page would be in the same place he has been for at least 15 years (*i.e.*, in prison serving a life sentence on a first degree murder conviction) and his basic needs would be covered by the State of California for the foreseeable future.  *See Page v. CSATF/SP Warden*, E. D. Cal. No. 11-CV-1626 DLB, Petition for Writ of Habeas Corpus, p. 3.  Whether he accepted or rejected the settlement, his basic needs would be covered by the State of California for the foreseeable future.  The terms of the settlement also do not themselves suggest any impropriety.  The settlement amount of $1,000 was not out of line with Plaintiff's relatively modest injuries that were inflicted by another prisoner rather than a prison official.  Page had alleged that the attacking prisoner gained access to him due to Defendants' misdeeds, but it is far from certain that he would be able to meet his burden to prove that the Defendants acted with deliberate indifference, as he would have had to do to prevail on his § 1983 claim.

      Page has misgivings about the settlement agreement, and thinks he might do better if he had another settlement conference.  However, the law does not allow someone to rescind a contract simply because he no longer likes the terms to which he agreed.  A contract (*i.e.*, the settlement agreement) was made, and it was not made as a result of duress.  The settlement agreement will be enforced.  Page's motion to renege on the settlement agreement is **DENIED**.  (Docket # 68.)

      In their opposition to Plaintiff's motion to renege, Defendants request that the Court "order Page to sign the payee data form, as a prerequisite to his receipt of the settlement funds."  Docket # 74 ( Defendants' Joint Opposition To Plaintiff's Motion To Nullify The Parties' Settlement Agreement), p. 6.  The request is premature and will not fully implement the planned resolution as described by Magistrate Judge Vadas.  As Magistrate Judge Vadas explained, counsel for the State

**United States District Court**

For the Northern District of California

1  will send to Page (1) the settlement agreement, (2) "a payee data sheet that [Page] will need to fill

2  out in order to get the money on [his] books," and (3) a dismissal form.  Docket # 72, RT 4-5.  As

3  Magistrate Judge Vadas also explained, Page will "sign the dismissal and the settlement agreement"

4  and "fill out the payee data sheet," and then, once the money is paid, defense counsel will file the

5  dismissal.  RT 5.  Defendants should prepare and send the documents described to Page, and he

6  should sign and fill out the documents.  If Page fails to sign and fill out the documents, Defendants

7  may move to enforce the settlement.  (Likewise, if Defendants fail to prepare and send the

8  documents, or fail to make the payment after Page does his part, he may move to enforce the

9  settlement.)  The parties are cautioned to read the case of *Doi v. Halekulani Corp.*, 276 F.3d 1131

10  (9th Cir. 2002) carefully, so that they appreciate and understand the distinct possibility of sanctions

11  being imposed against a party who refuses to sign or implement the settlement agreement.

12  Plaintiff has filed a request for appointment of counsel to represent him in this action.

13  (Docket # 79.)  A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel

14  to represent an indigent civil litigant in exceptional circumstances.  *See Wilborn v. Escalderon*, 789

15  F.2d 1328, 1331 (9th Cir. 1986).  This requires an evaluation of both the likelihood of success on the

16  merits and the ability of the Plaintiff to articulate his claims *pro se* in light of the complexity of the

17  legal issues involved.  *See id.*  Neither of these factors is dispositive and both must be viewed

18  together before deciding on a request for counsel under § 1915(e)(1).  Here, exceptional

19  circumstances requiring the appointment of counsel are not evident at this time.  Since this action

20  has been settled in full, and there only remains the small matter of the parties executing the

21  necessary documents to effectuate that settlement, the request for appointment of counsel is

22  **DENIED**.

23  **IV.   CONCLUSION**

24  Page's motion to renege on the settlement agreement is **DENIED**.  (Docket # 68.)  Plaintiff's

25  request for appointment of counsel is **DENIED**.  (Docket # 79.)

26  If the parties have not filed a stipulated dismissal by **December 2, 2011**, defense counsel

27  must file by that date a brief status report informing the court of the status of the settlement, *e.g.*,

28

when the settlement agreement was signed, when the money was/will be paid, and when the

stipulation for dismissal will be filed.

        This order disposes of Docket Nos. 68 and 79.

        IT IS SO ORDERED.


Dated:  October 28, 2011

                                        _____

                                        EDWARD M. CHEN
                                        United States District Judge

**United States District Court**
For the Northern District of California